[Cite as *State v. Lipkins*, 2023-Ohio-1192.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| TERREL J. LIPKINS, | : | Case No. 2022CA00053 |
| | : | 2022CA00054 |
| Defendant - Appellant | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Stark County Court of Common Pleas, Case Nos. 2021 CR 1715A and 2021 CR 2188A

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      April 10, 2023

APPEARANCES:

For Plaintiff-Appellee

KYLE L. STONE
Prosecuting Attorney
Stark County, Ohio

By: TIMOTHY E. YAHNER
Assistant Prosecuting Attorney
Appellate Division
110 Central Plaza South Ste. 510
Canton, Ohio 44702-1413

For Defendant-Appellant

D. COLEMAN BOND
116 Cleveland Avenue NW
Suite 600
Canton, Ohio 44702

*Baldwin, J.*

{¶1} Terrell J. Lipkins appeals his conviction of multiple offenses in case numbers 2021CR1715(A) and 2021CR2188(A).

{¶2} In case number 2021CR1715(A), Lipkins was convicted of Murder, in violation of R.C. 2903.02(B), an unclassified felony, with Firearm Specifications, R.C. 2941.145(A) and R.C. 2941.146(A) and a Repeat Violent Offender Specification, R.C. 2941.149(A); Felonious Assault, in violation of R.C. 2903.11(A)(1)(2) a felony of the second degree with Firearm Specifications, R.C. 2941.145(A) and R.C. 2941.146(A) and a Repeat Violent Offender Specification, R.C. 2941.149(A); Discharge of a Firearm on or Near Prohibited Premises, in violation of R.C. 2923.162(A)(3), a felony of the third degree, with Firearm Specifications, R.C. 2941.145(A) and R.C. 2941.146(A); two counts of Improperly Handling Firearms in a Motor Vehicle, in violation of R.C. 2923.16(A), felonies of the fourth degree with a Firearm Specification, R.C. 2941.145(A); and Having Weapons While Under Disability, in violation of R.C. 2923.13(A)(2) a felony of the third degree with a Firearm Specification, R.C. 2941.145(A).

{¶3} In case number 2021CR2188(A) Lipkins was convicted of two counts of Felonious Assault in violation of R.C. 2903(A)(2), felonies of the second degree, with Firearm Specifications, R.C. 2941.145(A) and R.C. 2941.146(A) and a Repeat Violent Offender Specification, R.C. 2941.149(A).

{¶4} Lipkins also appeals the sentence imposed by the Stark County Court of Common Pleas. The State of Ohio is Appellee.

**STATEMENT OF THE FACTS AND THE CASE**

{¶5}   J.N. was the victim of a drive by shooting on August 7, 2021 near her home and in the presence of her daughter, M.N. and two other witnesses, all of whom had been talking immediately prior to the attack. The local authorities relied primarily on circumstantial evidence to tie Lipkins to the offense, compiling video from local residences and businesses with GPS monitoring to track his movements, a doorbell video recording to establish access to a weapon and forensic examination of his clothing to demonstrate that he was present when a weapon was fired.

{¶6}   J.N., her adult daughter, M.N., their neighbor, N.H. and his brother, C.T. were in an alley behind J.N.'s home engaged in conversation when a black vehicle with tinted windows and damage to the left rear fender passed by them. They paid little attention to the vehicle, finished their conversation and N.H. and C.T. began to walk home.

{¶7}   Before they had moved far from the alley, the same black vehicle returned and a passenger in the rear driver's side vehicle fired seven to ten shots. N.H. and C.T. dropped to the ground and escaped harm, but J.N. was shot in the stomach and doubled over in pain. M.N.'s daughter called 911 and the Canton Police Department was first on the scene.

{¶8}   The police officer noted that J.N. suffered a wound that entered and exited her body and he attempted to staunch the bleeding until the ambulance arrived. J.N.'s wounds proved to be fatal, the bullet passing through her back, then arteries and veins as well as her stomach. The coroner's office ruled that the death was a homicide as a result of a gunshot wound.

{¶9} The Canton Police Department began investigating the shooting within minutes of the 911 call. From N.H. and C.T., they learned that the vehicle was a black Malibu with a Spitzer dealership plate and that the weapon used had an extended magazine. While at the scene, detectives from the Canton Police Department began canvassing the neighborhood with the hope of finding a residential security camera that may have recorded the offense. The detectives did find a such recording in a camera about a block away from the scene of the shooting.

{¶10} Two witnesses, N.H. and A.F., noticed a pink steering wheel cover in the Malibu. N.H. recalled that the gun was black, had an extended magazine and that seven to ten shots were fired. The home of the decedent, J.N., was hit by two bullets and a neighboring house was struck. Windows in vehicles were shattered and the vehicle bodies were damaged by bullets.

{¶11} The Canton Police Department issued an alert to be on the lookout for a black Malibu with a Spitzer plate frame and a visible scratch across a corner panel. They also investigated the link to the local Chevrolet dealer, Spitzer, where a sales person recalled selling a 2014 black Chevrolet Malibu with tinted windows and that the buyer had asked if the tint was legal. The Canton Police Department, with the assistance of the authority of the trial court, obtained a copy of the purchase agreement and discovered that the vehicle was sold to Sabriah Johnson, the mother of Lipkins' daughter.

{¶12} The Canton Police Department knew that Lipkins socialized with Javier Blood and that Blood was obligated to wear a GPS monitor that would allow his movements to be tracked. The Canton Police Department reviewed GPS record of Blood's whereabouts on the day of the shooting and after discovering the addresses of

locations that he visited, an officer reviewed video recordings from security cameras at the different locations. The videos showed that Blood and Lipkins traveled together, beginning at approximately 1:45 p.m., and that they were using a dark Chevrolet Malibu with a pink steering wheel cover. Lipkins and Blood appeared in videos from five different commercial establishments leading up to the time of the shooting.

{¶13} As they approached the scene of the shooting, two Ring cameras tracked their progress. The cameras showed the Malibu circle the area once and then gunshots were heard on the second pass. J.N. was shot at 8:37 p.m. and the 911 call was made at 8:38 p.m. The GPS monitor traced the progress of Blood and Lipkins toward the shooting just minutes before it occurred. A different GPS system showed that the speed of the vehicle increased from 23 miles per hour before or near the time of the shooting then increased to a speeds of 53, 59 and 71 miles per hour after the shooting.

{¶14} The Canton Police Department recovered shell casings from the scene and determined that they were fired from a Glock, nine millimeter, hand gun. Based upon witness statements, the police concluded that the gun was fitted with an extended magazine. Sabriah Johnson had purchased a Glock nine millimeter hand gun in February 2021. And, upon searching Johnson's residence, they discovered video from a door bell camera that showed Lipkins with a hand gun and extended magazine, wearing a balaclava style mask and a medallion, the latter two items being the same as seen in videos of Blood and Lipkins recovered from business cameras on the day of the shooting.

{¶15} While at Johnson's residence, the police also discovered the white t-shirt with the distinctive graphic and the black pants Lipkins wore on the day of the shooting. A forensic expert confirmed that the shirt and the pants contained gunshot residue. The

medallion he wore in the videos taken on the day of the shooting was on Lipkins' person when he was taken into custody.

{¶16} The officers did not recover the gun used in the shooting, but they did discover two boxes of 9mm ammunition at Johnson's home.

{¶17} The vehicle was recovered in Barberton, Ohio on August 11, 2021 and the police found within it a pink steering wheel cover, Lipkins' social security card, and the Spitzer plate still attached to the vehicle.

{¶18} Lipkins, and co-defendant, Blood, were charged with: Murder in violation of R.C. 2903.02(B), an unclassified felony; Felonious Assault in violation of R.C. 2903.11(A)(1)/(2), a felony of the second degree; Having Weapons Under a Disability in violation of R.C. 2923.13(A)(2), a felony of the third degree; Discharging a Firearm on or Near Prohibited Premises in violation of R.C. 2923.162(A)(3), a felony of the third degree; and two counts of Improperly Handling Firearms in a Motor Vehicle in violation of R.C. 2923.16(A)/(B), both felonies of the fourth degree. All six counts contained three-year fire arm specifications. (R.C. 2941.145(A)). The Murder, Felonious Assault, and Discharge of Fire Arm on or Near Prohibited Premises included five-year Firearm Specifications. (R.C. 2941.146(A)). The Murder and Felonious Assault counts both contained repeat violent offender specifications pursuant to R.C. 2941.149(A).

{¶19} On October 14, 2021, the grand jury issued a second, secret indictment charging Lipkins and Blood with two additional counts of Felonious Assault, in violation of R.C. 2903.11(A)(2), both felonies of the second degree. Each count carried a R.C. 2941.145(A) three-year Firearm Specification, a R.C. 2941.146(A) five-year Firearm Specification, and a R.C. 2941.149(A) Repeat Violent Offender Specification.

**{¶20}** Blood and Lipkins were tried separately, and Blood's trial ended with an acquittal prior to the commencement of Lipkins' trial. The jury found Lipkins guilty on all counts as presented and the trial court then found him guilty of Having Weapons While Under Disability, R.C. 2923.13(A)(2) with a Firearm Specification, R.C. 2941,145(A)as well as a Repeat Violence Offender Specification, R.C. 2941.149(A).

**{¶21}** The trial court imposed a total prison term of forty-two years to life imprisonment in Case No. 2021CR1715(A) to be served consecutive to the sentence imposed in Case No. 2021CR2188(A) which was comprised of an aggregate minimum prison term of sixteen years up to a maximum prison term of twenty years, with an additional mandatory thirteen years on the specifications be served consecutive and prior to any other prison term.

**{¶22}** Lipkins filed a timely appeal and submitted five assignments of error:

**{¶23}** "I. THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST THE APPELLANT, AND THE CONVICTIONS MUST BE REVERSED."

**{¶24}** "II. THE APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND MUST BE REVERSED."

**{¶25}** "III. APPELLANT'S RIGHTS UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTIONS WERE VIOLATED AS HE WAS DENIED APPELLATE REVIEW OF HIS SENTENCE UNDER R.C. 2953.08, AS SUBSECTION (D)(3) UNCONSTITUTIONALLY PROHIBITS REVIEW OF A SENTENCE IMPOSED FOR MURDER."

**{¶26}** "IV. APPELLANT'S RIGHT TO PRESENT A DEFENSE, TO DUE PROCESS AND A FUNDAMENTALLY FAIR TRIAL WAS DENIED BY THE TRIAL COURT'S LIMITATION ON EVIDENCE DEMONSTRATING THAT THE PRINCIPAL OFFENDER TO WHICH APPELLANT WAS ALLEGED TO HAVE AIDED AND ABBETED(sic) WAS ACQUITED(sic) OF ALL CHARGES, AND BY PERMITTING EVIDENCE OF APPELLANT'S PRIOR BAD ACTS, IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS AND ARTICLE I §§ 2, 9, 10, & 16 OF THE OHIO CONSTITUTION."

**{¶27}** "V. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT SENTENCED APPELLANT ON OFFENSES THAT SHOULD HAVE MERGED AS A MATTER OF LAW."

**I., II.**

**{¶28}** Lipkins first and second assignments of error, that the conviction was not supported by sufficient evidence and was against the manifest weight of the evidence are closely related and will be combined for purposes of our analysis.

**{¶29}** The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court. *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 30. "This naturally entails a review of the elements of the charged offense and a review of the state's evidence." *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 13.

**{¶30}** When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, superseded by State constitutional

amendment on other grounds as stated in *State v. Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).* "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. *State v. Poutney*, 152 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶ 19. Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, '*if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.' " *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus. We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.' " *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 74.

**{¶31}** As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), superseded by constitutional amendment on other grounds as stated by *State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio-355; *State v. Issa,* 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

* * *

> "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**{¶32}** The reviewing court must bear in mind; however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008-Ohio-1744, ¶ 31. Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, the appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, ¶ 20. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke,* 7th Dist. Mahoning No. 99 CA 149, 2002-Ohio-1152, ¶ 13, citing *State v. Gore,* 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist. 1999). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact-finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer,* 4th Dist. Pickaway No. 11CA9, 2012-Ohio-1282, ¶ 24.

**{¶33}** In the first assignment of error, Lipkins presents five arguments to support his contention that there was insufficient evidence to support his conviction:

**{¶34}** [A]ny rational trier of fact could not have found, beyond a reasonable doubt, that the Appellant was guilty of aggravated murder because there was no[t] sufficient evidence of the necessary element of prior calculation and design (Appellant's Brief, p. 18);

**{¶35}** [T]he State failed to present sufficient evidence that Appellant was involved in the alleged shooting incident or at the scene of the crime (Appellant's Brief, p. 18);

**{¶36}** [T]he State failed to present any evidence that Appellant attempt to cause any physical harm to either of those individuals (regarding Felonious Assault) (Appellant's Brief, p. 19);

**{¶37}** [T]he State failed to present any evidence of Appellant's prior convictions at trial, and instead after it rested, the State presented this evidence for the first time during the sentencing hearing.(Regarding Weapons Under a Disability) (Appellant's Brief, p. 20).

**{¶38}** We will review each argument separately.

### MURDER

**{¶39}** Lipkins was charged with and convicted of a violation of R.C. 2903.02(B), Murder, and not Aggravated Murder, R.C. 2903.01 as he claims in his brief. Aggravated Murder does contain an element of "prior calculation and design" in subsection A, but the charge of Murder under R.C. 2903.02(B) requires proof that Lipkins caused "the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code" and contains no requirement of "prior calculation and design." Lipkins sole argument related to the murder charge is based

upon a mistaken characterization of the basis of the conviction and requires no further analysis.

**{¶40}** Lipkins first assignment of error regarding the charge of Murder is denied.

## IDENTITY OF THE OFFENDER

**{¶41}** Lipkins contends the record contains insufficient evidence to support the jury's finding that he was involved in the offense. He relies on the lack of eyewitnesses that identify him as being in the vehicle despite his distinctive clothing and that one witness described the shooter as having a long black sleeve and that description was inconsistent with the state's evidence regarding the offender's clothing. Further, Lipkins contends that there was no evidence to show that he was still in the vehicle from the time that the vehicle left the Gables of Canton until the time of the shooting.

**{¶42}** The Appellee provided evidence connecting Lipkins to the vehicle as well as video and GPS documentation tracing his movements for several hours prior to the offense. Despite his assertion to the contrary, Lipkins was seen leaving the vehicle after leaving the Gables of Canton. He and Blood stopped at BellStore and were seen leaving the store around 8:28 p.m. and the vehicle was tracked to the scene of the shooting which occurred approximately ten minutes later.

**{¶43}** The vehicle was recovered and searched. The officers not only found the pink steering wheel cover described by the witnesses, but they also found Lipkins' Social Security Card in the vehicle. After obtaining a warrant, the officers searched the residence where Lipkins resided and recovered clothing that matched what he was wearing prior to the shooting. The clothing tested positive for gunpowder residue confirming that it was in the vicinity of a weapon when it was fired.

**{¶44}** The police did not recover the weapon, but they did discover ammunition for the weapon at Lipkins' residence as well as doorbell videos showing him in possession of a weapon that matched the description of the firearm used in the shooting, a black Glock 9mm with an extended magazine.

**{¶45}** The testimony of the witnesses can be interpreted as inconsistent or conflicting, but the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the [trier of fact] may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies *503 do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP–739, 2000 WL 297252 (Mar 23, 2000) quoting *State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the [trier of fact] need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP–604, 2003-Ohio-958, 2003 WL 723225, ¶ 21, quoting *State v. Antill,* 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. Franklin No. 02AP–1238, 2003-Ohio-2889, 2003 WL 21291042, quoting *State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist.1992).

**{¶46}** And, we acknowledge that the state relies upon circumstantial evidence to support the charges against Lipkins but "[c]ircumstantial evidence and direct evidence inherently possess the same probative value [.]" *State v. Jenks,* 61 Ohio St.3d 259, 272, 574 N.E.2d 492, 502 (1991) paragraph one of the syllabus. Furthermore, "[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that it weigh all of the

evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." *Jenks*, *supra* at 272.

**{¶47}** While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. *State v. Lott* (1990), 51 Ohio St.3d 160, 168, 555 N.E.2d 293, quoting *Hurt v. Charles J. Rogers Transp.* Co. (1955), 164 Ohio St. 329, 331, 130 N.E.2d 820. Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusions in a case. *Lott, supra* at 168 quoting *Hurt, supra* at 331.

**{¶48}** The Appellee provided sufficient evidence, if believed, to demonstrate that Lipkins was the driver of the vehicle involved in the shooting. The distinct combination of characteristics of the vehicle, the fact that it was titled to the mother of his child and the fact that it was found abandoned with his social security card within the vehicle could lead a jury to the conclusion that he was the driver. The video recordings of Lipkins in the car hours before the shooting and up to approximately ten minutes before the shooting as well as the GPS information that tracked Blood, the other person in the vehicle, passing by the victims at the time of the shooting further bolsters the logic of the jury's conclusion. The gun shot residue on Lipkins' clothing and the doorbell video showing him in possession of a weapon that matched the description of the firearm used to commit the offense are additional facts that serve to support the jury's finding of guilt.

**{¶49}** After review of the record, we are persuaded that that *if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.' " *Murphy*, *supra at* 543 and that reasonable minds could reach the conclusion reached by the trier-of-fact.

{¶50} Lipkins assignment of error regarding this issue is denied.

**FELONIOUS ASSAULT/ATTEMPT TO CAUSE HARM**

{¶51} In his next argument, Lipkins contends that Appellee failed to present any evidence that he attempted to cause any physical harm to either C.T or N.H and thus he cannot be found guilty of Felonious Assault. Lipkins concludes that because there was no evidence that the bullets were aimed at either person and there is no evidence regarding how close the shots came to striking either, Lipkins did not commit a Felonious Assault.

{¶52} Lipkins was convicted of Felonious Assault, a violation of R.C. 2903.11(A)(2) which states in relevant part that "No person shall knowingly * * * [c]ause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance." Lipkins argument suggests that he believes that the Appellee must establish that there was an intent to harm either C.T. or N.H., but knowingly is not synonymous with intentional. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B) Lipkins is attempting to amend the statute and require proof that the attempt to injure the victims was committed purposefully, with a "specific intention to cause a certain result," which would be wounding the victims. We must reject Lipkins invitation to amend the statute.

{¶53} The trier of fact may determine an accused's intent from the facts and circumstances present in a particular case. *State v. Seiber* (1990), 56 Ohio St.3d 4, 564 N.E.2d 408. Because the intent of an accused person is only in his mind and is not ascertainable by another, it cannot be proven by direct testimony of another person but

must be determined from the surrounding facts and circumstances. *State v. Flowers* (1984), 16 Ohio App.3d 313, 475 N.E.2d 790, citing State v. Huffman (1936), 131 Ohio St. 27, 1 N.E.2d 313.

{¶54} In this case, the record shows that Lipkins and Blood drove past C.T. and N.H. once, then when they passed by a second time, seven to ten shots were fired in the direction of C.T., N.H., J.N. and M.N., causing both C.T. and N.H. to drop to the ground. The bullets struck and eventually killed J.N. and caused damage to homes and vehicles in the area. The shooting was not accidental and by all accounts was directed toward the persons talking by the side of the road. The second drive by, then number of shots fired, the damage to property and the reaction of the victims all support the conclusion that the shooting was done with knowledge that the bullets were likely to strike the victims.

{¶55} We find that the facts in the record support the jury's conclusion that Lipkins acted knowingly in an attempt to cause harm to C.T. and N.H. The first assignment of error is denied with regard to this issue.

**WEAPONS UNDER A DISABILITY**

{¶56} Lipkins asserts that the Appellee failed to present any evidence of prior convictions at trial and instead, after resting, presented evidence for the first time at sentencing. For this reason, Lipkins concludes, the Weapons Under Disability charge must be dismissed.

{¶57} The trial court addressed the charge of Having Weapons Under a Disability prior to sentencing when it stated: "There was also one count that was tried to the Court, having weapons under disability, which the court feels there's evidence beyond a

reasonable doubt to find the Defendant guilty of that charge as well." (Trial Transcript, p 629, lines 15-20).

**{¶58}** At the sentencing hearing, the trial court greeted the parties and the persons in attendance and began by noting that "Before we get started, there's a couple of things that I want to address right off the bat," and the trial court then addressed the repeat violator offender specification. (Sentencing Transcript, p. 5, line 17 to p. 6, line 10). Before proceeding with sentencing, the Appellee interjected:

MR. BARR: Just briefly, Your Honor.

THE COURT: Oh.

MR. BARR: Before the Court goes any further, the State would at this time move to admit State's Exhibits 33 and 34 which go to the prior repeat violent offender specification.

THE COURT: Okay.

MR. BARR: They are copies of those convictions in 2020CR1394B and 2016CR1016, both of which are convictions for Felonious Assault. And I would present those to the Court at this time.

THE COURT: Okay.

MR. BARR: Those also go, Your Honor, to the weapons under disability charge. We are a little -- we also in conversations with Mr. Kovalchik have -the defense attorney has told us that they will stipulate that Mr. Lipkins is the one and the same person that is in those convictions.

THE COURT: Okay, thank you. So it's based on these convictions State's Exhibit 33 and 34. That included the intimidation, aggravated menacing in

Stark County Common Pleas Case No. 2016CR-1016 and Case No. 2020CR1394B two counts of Felonious Assault.

(Sentencing Transcript, p. 6, line 11 to p. 7, line 16).

**{¶59}** Lipkins' counsel had prior knowledge of these documents and the intent to offer them at this time based upon the Appellee's representation of Lipkins' stipulation. Lipkins' offered no objection to the submission of the exhibits or their consideration by the court.

**{¶60}** Pursuant to Evid. R. 103(A), a party's failure to object to the admission of evidence at trial constitutes a waiver of all but plain error on appeal. *State v. Frazier* (1995), 73 Ohio St.3d 323, 332, 1995-Ohio-235, 652 N.E.2d 1000; *State v. Lott* (1990), 51 Ohio St.3d 160, 174, 555 N.E.2d 293 quoting *State v. Gordon* (1971), 28 Ohio St.2d 45, 276 N.E.2d 243, at paragraph two of the syllabus.

**{¶61}** Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." However, for a reviewing court to find plain error, the court must find that the error is an obvious defect in trial proceedings which affected the defendant's substantial rights. *State v. Barnes,* 94 Ohio St.3d 21, 2002-Ohio-68, 759 N.E.2d 1240. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of syllabus.

**{¶62}** Lipkins does not offer any argument to support a finding a plain error and we are reluctant to create one on his behalf on the record before us. Had he objected, the trial court would have had the discretion to reopen the record for submission of further

evidence. *Askin v. Askin,* 10th Dist. Franklin No. 94APF05–720, 1995 WL 41600, *7, 1995 Ohio App. LEXIS 313, *20, quoting *Pyle v. Pyle*, 11 Ohio App.3d 31, 37, 463 N.E.2d 98 (8th Dist.1983). We find nothing in the record that would suggest that reopening the record in this case would have constituted an abuse of discretion and, consequently, we find no plain error.

**{¶63}** As Lipkins has waived this objection and the record does not reflect plain error, the assignment of error regarding this issue is denied.

**{¶64}** For the forgoing reason, the first assignment of error is denied.

**{¶65}** Further we have reviewed the record and conclude that there is no evidence that the jury lost its way and issued a decision against the manifest weight of the evidence. The record presents sufficient evidence to support the jury's resolution of any conflicts of issues of credibility and we find nothing that would suggest that Lipkins was a victim of a manifest miscarriage of justice.

**{¶66}** Lipkins second assignment of error is denied.

**III.**

**{¶67}** In his third assignment of error, Lipkins states that his rights under the Eighth and Fourteenth Amendments to the United States Constitutions were violated as he was denied appellate review of his sentence under R.C. 2953.08, as subsection (d)(3) unconstitutionally prohibits review of a sentence imposed for murder.

**{¶68}** Counsel for Lipkins presented the same assignment of error and argument to this court in the case of *State v. Nelson*, 5th Dist. Stark No. 2021CA00112, 2022-Ohio-4170 and Lipkins has not persuaded us we should reach a different conclusion in this case. In *Nelson* we adopted our analysis in *State v. Weaver*, 2017-Ohio-4374, 93 N.E.3d

178 (5th Dist.), appeal not allowed, 151 Ohio St.3d 1510, 2018-Ohio-365, 90 N.E.3d 950 where we concluded that "we were without statutory authority to review the sentence for aggravated murder." *Nelson*, *supra* at ¶ 53. We next reviewed and applied our decision from *Weaver* "that that R.C. 2953.08(D)(3) did not violate the defendant's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution." *State v. Weaver*, 2017-Ohio-4347, ¶ 20 as quoted in *Nelson, supra* at ¶ 54 and we concluded that "that the absence of appellate review for Nelson's sentence does not violate the Eighth Amendment*. Nelson, supra* at ¶ 54.

*{¶69}* Within the *Nelson* decision and in the briefs before us, there are references to a pending case before the Supreme Court of Ohio, *State v. Grevious*, 2022-Ohio-4361. The Supreme Court of Ohio recently issued its opinion affirming the Twelfth District Court of Appeals decision that R.C. 2953.08(D)(3) was constitutional. *State v. Grevious*, 2022-Ohio-4361, ¶ 1, so we find that *Grevious* does not support Lipkins' assertions, but instead confirms our holding in *Nelson.*

**{¶70}** Lipkins third assignment of error is denied.

**IV.**

**{¶71}** In his fourth assignment of error, Lipkins asserts the trial court erred by prohibiting him from introducing evidence that his co-defendant, Blood, was acquitted at trial and that the trial court erroneously permitted the Appellee to introduce video and photographs of him holding a weapon that matched the description of the firearm used in the shooting.

**{¶72}** "[A] trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the

rules of procedure and evidence." *Rigby v. Lake Cty.,* 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991). In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. Even in the event of an abuse of discretion, a judgment will not be disturbed unless the abuse affected the substantial rights of the adverse party or is inconsistent with substantial justice. *Id.*" *Beard v. Meridia Huron Hosp.,* 106 Ohio St.3d 237, 2005-Ohio-4787, 834 N.E.2d 323.

**{¶73}** Lipkins acknowledges that he was charged with complicity in the offenses arising from the shooting and that:

> [w]hile the State was not required to establish the identity of the principal offender to convict an offender of complicity, the State is required to show that a principal committed the offense. *See State v. Perryman* (1976), 49 Ohio St.2d 14, 27, 359 N.E.2d 1040 ("[I]n order to convict an offender of complicity, the state need not establish the principal's identity. Pursuant to R.C. 2923.03(C), the state need only prove that a principal committed the offense."

Appellant's Brief, p. 28.

**{¶74}** In support of his argument, Lipkins offers a citation to a case from the Supreme Court of Judicature of New York decided in 1835, *People v. Buckland*, 1835 WL 2558 (1835). Not only is that case not binding on this court and of questionable relevance as it considered the offense of compounding a larceny, the holding in that matter seems to have been refuted in *People v. Beintner,* 168 N.Y.S. 945, 948 (Sup. Ct.1918) where

that court decided that: "The conclusion is that a judgment in the principal felon's case, whether of conviction or acquittal, is not admissible for any purpose in an action against the accessory." *Id.* at 948. At least with regard to this ancient case, the law in New York seems to support the trial court's decision in this case.

**{¶75}** Lipkins discretely admits the weakness in his argument when he cites us to *State v. Hinzman*, 8th Dist. Cuyahoga No. 92767, 2010-Ohio-771 ¶ 27-28, where the Eighth District held that a "co-defendant's acquittal cannot be used as evidence of an accused's innocence. See *State v. Tutt* (Apr. 12, 1986), Warren App. No. CA85-09-056 ("[a] co-defendant's conviction can no more be used as evidence against an accused as a co-defendant's acquittal could be used by the accused as evidence of his innocence"). * * * In other words, Dillon's acquittal does not have the tendency to make a fact of consequence any more or less probable than it would be without the evidence."

**{¶76}** We agree with the logic used by the courts in *Hinzman* and *Tutt* and find that the trial court did not err by refusing to permit Lipkins to present evidence of Blood's acquittal in his trial.

**{¶77}** In the next part of the fourth assignment of error, Lipkins complains that the trial court erred by admitting video showing him carrying a firearm that matched the description of the weapon used in the offense claiming that admission of this prior act was prohibited by Evid. R. 404(B) because it only "demonstrates that he had a general propensity to carry weapons, and that evidence is specifically prohibited." (Appellant's Brief, p. 28). Appellee responds that: "The State did not offer the video to show a general propensity to carry weapons, but to show that Lipkins had access to a gun like the one used in the shooting, shortly before the shooting occurred." (Appellee's Brief, p. 23).

**{¶78}** Lipkins filed a motion in limine to exclude the video, and that motion was denied. Lipkins did not then object to the playing of the video before the jury, but instead cross examined the witness Appellee used to authenticate the video thus failing to preserve the issue in the record The decision on the motion in limine was a "tentative, preliminary or presumptive ruling about an evidentiary issue that is anticipated" but we need not review the propriety of the order because the claimed error was not preserved by a timely objection when the issue was reached during the trial. *State v. White* (1982), 6 Ohio App.3d 1, 451 N.E.2d 533 as quoted in *State v. Grubb*, 28 Ohio St.3d 199, 203, 503 N.E.2d 142 (1986). The "[f]ailure to object to evidence at the trial constitutes a **147 waiver of any challenge, regardless of the disposition made for a preliminary motion in limine. Evid.R. 103(A)(1); *State v. White*, *supra*; *Fetzek v. Lafon* (December 13, 1979), Franklin App. No. 79AP-419, unreported." State v. Wilson (1982), 8 Ohio App.3d 216, 220, 456 N.E.2d 1287, as quoted in *Grubb, supra* at 203.

**{¶79}** Lipkins has waived the error, leaving nothing for our review. But, even if we were to consider the assignment of error, our decision would remain unchanged.

*{¶80}* The video showing Lipkins in possession of a firearm that matched the description of the weapon used in the shooting proves "something other than the defendant's disposition to commit certain acts." *State v. Hartman,* 161 Ohio St.3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 22. It is relevant to a "non-character-based issue that is material to the case," the fact that Lipkins had access to a weapon that matched the description of the firearm used in the offense and further serves to support Appellee's contention that he participated in the offense. *State v. Smith*, 162 Ohio St.3d 353, 2020-Ohio-4441, 165 N.E.3d 1123 ¶ 38.

{¶*81*} After reviewing the arguments, we find that the trial court did not err in permitting this evidence as "the evidence's value '[was not] substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.' Evid.R. 403(A); Hartman at ¶ 29." *Id.*

{¶82} Lipkins' fourth assignment of error is denied.

**V.**

{¶83} In his fifth assignment of error, Lipkins contends that the trial court committed two errors regarding merger of offenses. First, he contends the trial court "erred when it sentenced Appellant on the three-year Firearm Specification accompanying Count II in Case No. 2021 CR 1715A" because the Trial Court found that Count II Felonious Assault in Case No. 2021 CR 1715A, merged with Count I, murder. As such, Appellant was not convicted of the offense of Felonious Assault in Count II. See R.C. 2941.25(A)." (Appellant's Brief, p. 29)

{¶84} We addressed an analogous situation in *State v. Bollar*, 5th Dist. No. 2020 CA 00077, 2021-Ohio-1578, 172 N.E.3d 499 and concluded that the "the Firearm Specifications accompanying the involuntary manslaughter and Felonious Assault were not subject to merger pursuant to R.C. 2929.14(B)." *State v. Bollar,* 5th Dist. No. 2020 CA 00077, 2021-Ohio-1578, 172 N.E.3d 499, ¶ 29. Recently the Supreme Court of Ohio affirmed our opinion in *State v. Bollar,* 2022-Ohio-4370, 2022 WL 17542971 so Lipkins assertion that the merger has an impact on the Firearm Specifications has been rejected by this court and the Supreme Court of Ohio.

{¶85} Lipkins also argues that the "Trial Court erred when it did not merge Count I and Count II in Case No. 2021CR 2188A with Count I in Case No. 2021 CR 1715A

because the offenses were allied offenses of similar import within the meaning of R.C. 2941.25.

**{¶86}** The indictment makes clear that the offenses involved harm to different victims. Count One and Two in Case 2021CR 2188A list N.H. and C.T. as victims of Felonious Assault. Count I in Case 2021 CR 1715A is the Murder charge involving J.N. as the victim. We need not engage in lengthy analysis as it is clear that these offenses are separate and do not merge. "When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 26. *See State v. Merritt,* 5th Dist. Richland No. 2020 CA 0063, 2021-Ohio-2847, ¶ 55 appeal not allowed, 165 Ohio St.3d 1480, 2021-Ohio-4289, 177 N.E.3d 1000, ¶ 55 (Counts one and eight involved different victims from each other and from the counts arising from the discovery of the weapons under the mattress. Therefore, the harm for A.M. and for W.W. is separate and distinct, and Appellant can be convicted of multiple counts.)

**{¶87}** We find that the record demonstrates that the harm to the victims is separate and distinct and that the trial court did not commit plain error by failing to merge the offenses.

**{¶88}** Lipkins' fifth assignment of error is denied.

{¶89}  The decision of the Stark County Court of Common Pleas is affirmed.

By: Baldwin, J.

Gwin, P.J. concur.

Hoffman, J., concurs in part
and dissents in part

*Hoffman, J., concurring in part, and dissenting in part*

{¶90} I concur in the majority's analysis and disposition of Appellant's assignments of error III, IV, and V. I further concur in the majority's analysis and disposition of Appellant's assignments of error I and II, with the singular exception as to its analysis of the weapons under a disability conviction.

{¶91} The state of Ohio did not move to reopen the trial record to admit the exhibits. While Appellant's counsel stipulated Appellant was the person in those convictions, such stipulation went to authentication and identity. That is not the same as stipulating to allowing the exhibits to be admitted at this stage of the proceedings as trial evidence to establish a necessary element of the offense.

{¶92} I find the evidence produced at trial was insufficient to support Appellant's conviction on the having a weapon under a disability charge and find such amounts to plain error.